UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
BENJAMIN BUTLER, on behalf of himself and
all other persons similarly situated,

CLASS ACTION COMPLAINT
AND DEMAND FOR JURY
TRIAL

*Plaintiff,*

**Docket No. _____**

v.

LOUIS VUITTON NORTH AMERICA, INC.
and LOUIS VUITTON MALLETIER S.A.S.,
*Defendants,*
-------------------------------------------------------------

Plaintiff, BENJAMIN BUTLER, ("Plaintiff" or "Mr. Butler") on behalf of himself and all

other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned

counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their

putative class action complaint upon Defendant, LOUIS VUITTON NORTH AMERICA, INC.

and LOUIS VUITTON MALLETIER S.A.S.'s ("LOUIS VUITTON" or "Defendant"), hereby

alleges as follows:

## INTRODUCTION

1.      On September 25, 2018, the U.S. Department of Justice reaffirmed its

longstanding position that websites operated by places of public accommodation must be

accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant

Attorney General Stephen E. Boyd stated that the Department first articulated its interpretation

that the ADA applies to public accommodations' websites over twenty years ago. This

interpretation aligns with Title III's mandate that goods, services, and privileges offered by

1

such entities be equally accessible to all, including those with disabilities. *See* U.S. Dep't of Justice, Letter from Ass't Attorney General Stephen E. Boyd to Rep. Ted Budd (Sept. 25, 2018),    https://www.adatitleiii.com/wp-content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf **(adatitleiii.com in Bing) (last accessed Feb. 17, 2026)).**

2.    Plaintiff BENJAMIN BUTLER is a legally blind resident of New York County who resides at Selis Manor, an assisted living facility for visually impaired individuals in Manhattan. He has been diagnosed with Retinitis Pigmentosa ("RP"), a progressive hereditary retinal dystrophy characterized by degeneration of the photoreceptor cells, resulting in severely constricted peripheral visual fields (tunnel vision), impaired night vision, decreased contrast sensitivity, and progressive loss of functional sight. His condition and legal blindness status are documented by Dr. Eleonora Orloff, OD, of Bronx Eye Associates. *(See* Exhibit A, Medical Letter of Dr. Eleonora Orloff, OD, dated November 8, 2025.)

3.    Mr. Butler is a proficient user of NonVisual Desktop Access ("NVDA") screen reader software, which he relies upon daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex online content—including retail websites, product pages, and checkout processes—without assistance. NVDA's compatibility with properly coded websites is indispensable to his autonomy and digital accessibility.

4.    This action arises from Defendants LOUIS VUITTON NORTH AMERICA, INC. and LOUIS VUITTON MALLETIER S.A.S.'s (collectively, "Louis Vuitton" or "Defendants") failure to design, maintain, and operate their commercial website, **https://us.louisvuitton.com** (the "Website"), in a manner accessible to blind and visually impaired individuals. The Website functions as an interactive retail platform offering luxury

handbags, jewelry, accessories, ready-to-wear clothing, footwear, watches, and related luxury goods. Defendants' failure to ensure equal access to these integrated services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5.      On multiple occasions in 2025 and 2026, Mr. Butler visited https://us.louisvuitton.com using NVDA with the intent to browse and purchase luxury goods, including items from the "The Essentials: Women's Designer Accessories" section as gift purchases. As a legally blind consumer, the opportunity to browse and pre-shop merchandise from his home is of particular importance to Mr. Butler because navigating in-person retail environments as a visually disabled individual is often difficult, hazardous, and requires him to seek assistance from strangers—an experience he finds uncomfortable, intrusive, and contrary to his independence and dignity. Defendants have not provided their business information or product catalog in any other digital format accessible to blind individuals using screen reader software. During each visit to the Website, Mr. Butler encountered multiple barriers that prevented him from meaningfully browsing, evaluating, and selecting products on equal terms with sighted customers.

6.      Because Louis Vuitton's Website is designed in a manner that blocks or circumvents standard automated accessibility testing tools—including SortSite and WAVE—Plaintiff relies upon his documented personal experience navigating the Website with NVDA, together with a manual audit of observed WCAG 2.1 Level AA violations, as the evidentiary basis for the accessibility barriers described herein. The Website's obstruction of third-party accessibility scanning tools is itself evidence of Defendants' failure to prioritize accessible digital infrastructure and their awareness of the Website's non-compliance.  See Exhibit B, Audit by Chris Vaughan.

7.      Plaintiff's use of the Website with NVDA revealed the following WCAG 2.1

Level AA violations, among others:

- WCAG 1.1.1 – Non-Text Content: Product images, including those of the LV Confetti Ring and LV Safari BB Bandeau, lacked meaningful alternative text describing color, pattern, material, or style. NVDA announced only the bare product name, depriving Mr. Butler of the visual information sighted shoppers use to make informed purchasing decisions.

- WCAG 1.3.1 – Info and Relationships: Product tiles were not grouped as semantic lists or grids. Filters and navigation elements lacked proper semantic grouping. ARIA attributes were used as substitutes for proper HTML structure rather than as supplements to it.

- WCAG 2.1.1 – Keyboard Accessibility: Image carousels and product selectors were not fully keyboard-operable. The "Virtual Try On" interactive control was not reachable through a predictable keyboard focus sequence.

- WCAG 2.4.3 – Focus Order: Keyboard focus jumped unpredictably among product tiles, wishlist buttons, and hidden or off-screen elements. Interactive elements were not announced in a logical reading sequence.

- WCAG 2.4.6 – Headings and Labels: Filter controls, product category selectors, and quick-navigation elements lacked programmatic labels. NVDA was unable to identify the purpose of many controls on the page.

- WCAG 3.3.2 – Labels or Instructions: Filter controls and product selectors provided no accessible instructions. There was no indication that additional interaction was required to reveal product details, color options, or size selectors.

- WCAG 4.1.2 – Name, Role, Value: The Website employed excessive and improperly implemented ARIA attributes, including aria-roledescription="Carousel of product images" without proper underlying roles. Wishlist buttons and "Virtual Try On" controls were not programmatically associated with their corresponding products.

- WCAG 4.1.3 – Status Messages: Dynamic content changes—including carousel advances, product color changes, and hover-state updates—were not announced to NVDA, leaving Mr. Butler unaware of changes occurring on the page.

8.      These failures collectively rendered the Website inaccessible to Mr. Butler and

members of the proposed Class, denying them full and equal access to the luxury goods and

services Defendants make available to the general public through both the Website and their

physical retail stores.

9.      Plaintiff seeks injunctive relief requiring Defendants to remediate the Website's

accessibility barriers and ensure that the Website is—and remains—fully accessible to blind

and visually impaired users in conformance with WCAG 2.1 Level AA. Without such relief, Plaintiff will continue to be excluded from accessing Defendants' goods and services on equal terms.

10.    Defendants' ongoing failure to provide an accessible digital platform constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendants to bring the Website into compliance with applicable federal accessibility standards.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, as amended, and 28 C.F.R. Part 36. Plaintiff also seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. Those claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL"). All claims derive from the same nucleus of operative facts as Plaintiff's ADA claim.

12.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant LOUIS VUITTON NORTH AMERICA, INC. maintains its principal United States offices in this District and conducts substantial, continuous business in New York through the Website, and its flagship retail stores, including the store at 1 E 57th Street, New York, NY 10022. Plaintiff accessed and attempted to use the Website from his

5

residence in New York County, and the discriminatory conduct giving rise to this action occurred within this District.

13.    Defendants purposefully avail themselves of the privilege of conducting business in New York by marketing, selling, and delivering products and services to New York residents through the Website and through multiple physical retail locations in this District. *See Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017).

## **PARTIES**

14.    Plaintiff BENJAMIN BUTLER is a natural person and resident of New York County, New York. Mr. Butler is legally blind as a result of Retinitis Pigmentosa. He uses NVDA screen reader software to access digital content and is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1)–2, and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101, *et seq.*

15.    Defendant LOUIS VUITTON NORTH AMERICA, INC. is a foreign for-profit corporation authorized to do business and doing business in the State of New York. It owns and operates a nationwide chain of retail stores selling men's and women's bags and leather goods, fragrances, shoes, apparel, jewelry, and accessories, and operates, controls, and maintains the Website https://us.louisvuitton.com for consumers in the United States. It is responsible for the Website's compliance with applicable federal and state law.

16.    Defendant LOUIS VUITTON MALLETIER S.A.S. is a French société par actions simplifiée and the parent entity of the Louis Vuitton brand globally. It owns, controls, and directs the brand's digital infrastructure, including the Website, and exerts substantial control over the Website's design, accessibility policies, and content.

6

17.     At all relevant times, Defendants owned, operated, and/or controlled both the Website https://us.louisvuitton.com and the physical Louis Vuitton retail stores in the United States, including those in New York City. The Website and the physical stores are integrated components of a single place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104(2).

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and/or 23(b)(3). The proposed Class is defined as: all legally blind individuals in the United States who have attempted to access https://us.louisvuitton.com using screen reader software and were denied full and equal access to the goods, services, facilities, privileges, advantages, or accommodations offered thereon.

19.     The proposed New York City Subclass is defined as: all legally blind individuals in New York City who have attempted to access https://us.louisvuitton.com using screen reader software and were denied full and equal access to the goods, services, facilities, privileges, advantages, or accommodations offered thereon.

20.     Numerosity: The Class is so numerous that joinder of all members is impractical. Hundreds of thousands of blind and visually impaired individuals in the United States use the internet and rely on screen readers daily. The precise number of Class members may be ascertained through discovery.

21.     Commonality: Common questions of law and fact exist as to all Class members, including: (a) whether the Website violates Title III of the ADA; (b) whether Defendants' failure to make the Website accessible constitutes discrimination against blind individuals; (c) whether Plaintiff and the Class are entitled to injunctive relief; and (d) whether Plaintiff and

the Class are entitled to damages and attorneys' fees.

22.    Typicality: Plaintiff's claims are typical of those of all Class members. Plaintiff and all Class members have been injured by the same wrongful conduct—Defendants' failure to maintain an accessible website—and seek the same relief.

23.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex class action and disability rights litigation and has no interests antagonistic to those of the Class.

24.    Defendants have acted on grounds that apply generally to the Class, so that final injunctive and declaratory relief is appropriate respecting the Class as a whole under Fed. R. Civ. P. 23(b)(2). In the alternative, common questions predominate and a class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b)(3).

## FACTUAL ALLEGATIONS

**A.    Louis Vuitton's Website and Physical Stores as an Integrated Place of Public Accommodation**

25.    Each Louis Vuitton physical store is open to the public and is a place of public accommodation within the meaning of Title III of the ADA because Defendants are private entities that own and/or operate "[a] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment." 42 U.S.C. § 12181(7)(E); 28 C.F.R. § 36.104(2). Each physical store is therefore subject to the requirements of Title III of the ADA and its implementing regulations. 42 U.S.C. §§ 12182, 12181(7)(E); 28 C.F.R. Part 36.

26.    Defendants    also    control,    maintain,    and    operate    the    Website https://https://us.louisvuitton.com.  One of the functions of the Website is to provide the public

with information on the various locations of Defendants' physical stores throughout the United States. The Website also allows consumers to browse and purchase merchandise that is also available for purchase in Defendants' physical stores, and to sign up for an electronic mailing list to receive offers, benefits, exclusive invitations, and discounts for use both online and in Defendants' physical stores.

27.    The Website also services Defendants' physical stores by providing information on available products and branded merchandise, styling tips, editorials, sales campaigns, events, and other communications directed to customers. It further enables consumers to utilize interactive features such as "Virtual Try On," save items to a wishlist, and complete purchases for home delivery or in-store pickup.

28.    Because the Website allows the public to locate Defendants' physical stores, purchase merchandise available in those stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, Defendants' physical stores. By this nexus, the Website is an intangible service, privilege, and advantage of a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges, and advantages made available to the general public by Defendants through their brick-and-mortar locations. The Website is therefore subject to all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal enjoyment of its services, privileges, and advantages as are afforded to the non-disabled general public. *See Pallozzi v. Allstate Life Ins. Co.,* 198 F.3d 28 (2d Cir. 1999); *Andrews v. Blick Art Materials, LLC,* 268 F. Supp. 3d 381 (E.D.N.Y. 2017).

29.    Louis Vuitton operates multiple flagship and boutique retail locations in New

York City, including stores at 1 E 57th Street and 116 Greene Street, among others.

**B.      Mr. Butler's Disability, His Reliance on the Website, and His Attempts to Access It**

30.      Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future, Defendants' physical stores in New York City, and to purchase Defendants' merchandise both online and in Defendants' physical stores.

31.      The opportunity to shop and pre-shop Defendants' merchandise from his home is an important accommodation for Mr. Butler. Traveling outside of his home as a visually disabled individual is often difficult, hazardous, and presents significant logistical and emotional burdens. In-person retail environments frequently require Mr. Butler to seek assistance from strangers to identify products and navigate the store—an experience he finds uncomfortable, intrusive, and contrary to his independence and dignity. Defendants have not provided their business information or product catalog in any other digital format accessible to blind individuals using screen reader software.

32.      Like many consumers, Mr. Butler accesses a number of websites to help plan his visits, compare merchandise, prices, and promotions. Plaintiff depends on screen-reader-compatible retail websites to make informed purchasing decisions and to exercise the same autonomous consumer choices available to sighted shoppers.

33.      Mr. Butler is a proficient user of NVDA, a widely used and commercially available screen reader software application. When a website is properly coded in conformance with applicable accessibility standards, NVDA enables Mr. Butler to read product names, image descriptions, pricing information, interactive controls, and navigation menus, allowing him to shop online independently. According to 28 C.F.R. § 36.303(b)(2), screen reader

software is an effective method of making visually delivered material available to individuals who are blind or have low vision and constitutes an auxiliary aid and service that public accommodations are required to support.

34. On November 4 and 5, 2025, Plaintiff visited https://us.louisvuitton.com from his home in Manhattan for the specific purpose of evaluating two products as potential gifts for his wife: the **LV Confetti Ring**, a gold-toned fashion ring featuring a fuchsia enamel disk and Louis Vuitton's signature Monogram motif, and the **LV Safari BB Bandeau**, a silk accessory printed with a leopard-pattern reinterpretation of the Monogram and jungle-inspired illustrations. These items appear in the "The Essentials: Women's Designer Accessories" section of the Website and align with his wife's established preference for colorful, expressive accessories. Plaintiff returned to the website on December 5, 2025, to determine if Defendant had made any changes to their website, to no avail as no such changes were implemented.

35. Plaintiff attempted to review the appearance, features, sizing, and pricing of these products, and to determine whether to visit a Louis Vuitton retail store in New York City to complete a purchase. However, Plaintiff was unable to do so because the Website contains multiple accessibility barriers that directly interfered with his ability to evaluate these specific items.

36. When attempting to evaluate the **LV Confetti Ring**, Plaintiff encountered missing or non-descriptive alternative text for the product images, preventing him from understanding the ring's gold-tone finish, fuchsia enamel, and Monogram design. The size selector was not accessible to NVDA, preventing Plaintiff from determining whether the ring was available in his wife's size. The price was not reliably announced, and the "Place in Cart" button was not properly labeled or associated with the product, preventing Plaintiff from

11

adding the item to his cart.

37.    When attempting to evaluate the **LV Safari BB Bandeau**, Plaintiff encountered similar barriers. The product images lacked meaningful alternative text describing the bandeau's leopard-print Monogram pattern, beige colorway, and silk material. The dimensions were not announced clearly, the product description was presented in non-semantic blocks that NVDA could not navigate, and the "Place in Cart" button was not accessible. Related sections such as "Get the Look" and "Recently Viewed" were not programmatically labeled, making navigation confusing and preventing Plaintiff from returning to the product after exploring related items.

38.    These barriers prevented Plaintiff from understanding the appearance, features, sizing, and purchase options of the specific products he intended to buy, causing him concrete and particularized injury.

39.    Plaintiff's injury is traceable to Defendants' failure to design and maintain the Website in a manner that is accessible to screen-reader users.

40.    Plaintiff intends to return to the Website within the next ninety-days to determine whether Defendants have remediated the accessibility barriers and, if so, to complete his evaluation and potential purchase of the LV Confetti Ring, the LV Safari BB Bandeau, or similar accessories for his wife.

41.    Mr. Butler attempted to locate an accessibility notice, statement, or policy on the Website that would direct him to a webpage with contact information and accommodations for disabled users who are having difficulties accessing the Website. He was unable to do so because no such link, notice, statement, or policy was visible or accessible to him during his visits. The Website does not display an accessibility portal, hotline, or information page that

would permit disabled individuals to identify and access available accessibility features or request assistance.

42.     The fact that Mr. Butler could not effectively communicate with or navigate the Website left him feeling excluded and denied the ability to participate in the same online shopping experience—including access to merchandise, sales, discounts, and promotions— available to the non-disabled public.

**C.     Accessibility Barriers Encountered by Plaintiff on the Website**

43.     WCAG 1.1.1 – Missing and Non-Descriptive Alternative Text. Product images throughout the Website, including images of the LV Confetti Ring and the LV Safari BB Bandeau, lacked meaningful alternative text conveying the visual characteristics of the products—such as color, material, pattern, size, or distinguishing features. When Mr. Butler navigated these product images using NVDA, the screen reader announced only the bare product name. Sighted shoppers rely on these visual characteristics to make informed purchasing decisions. Mr. Butler was denied equivalent information and was unable to evaluate the products as a sighted consumer could.

44.     WCAG 1.3.1 – Improper Information Structure. The Website's product tiles were not grouped as semantic lists or grids, preventing NVDA from conveying the structural relationship between products on the page. Filter and navigation elements lacked proper semantic grouping and relied on ARIA attributes as substitutes for proper HTML structure. As a result, Mr. Butler could not determine how many products were displayed, where one product ended and another began, or how the page was organized.

45.     WCAG 2.1.1 – Keyboard Inaccessibility. The Website's image carousels and product selector controls were not fully keyboard-operable. Mr. Butler could not advance

carousels or interact with product options using standard keyboard commands compatible with NVDA. The Website's "Virtual Try On" interactive feature was similarly inaccessible, as it was not reachable through a predictable keyboard focus sequence.

46.     WCAG 2.4.3 – Unpredictable Focus Order. Keyboard focus jumped unpredictably among product tiles, wishlist buttons, and hidden or off-screen elements. NVDA announced interactive elements out of logical reading sequence, making it impossible for Mr. Butler to follow the page's content in a coherent order or to reliably locate and activate specific controls.

47.     WCAG 2.4.6 – Unlabeled Controls. Filter controls, product category selectors, and quick-navigation elements throughout the Website lacked programmatic labels. When Mr. Butler navigated to these controls using NVDA, the screen reader was unable to identify their purpose. Mr. Butler could not determine whether a given control was a filter, a sort option, or a navigation link, and was therefore unable to refine or organize the product listings.

48.     WCAG 3.3.2 – Absence of Instructions. Filter controls and product selectors provided no accessible instructions indicating what action a user was expected to take. There was no indication to screen-reader users that additional interaction was required to reveal product details, color options, or size selectors.

49.     WCAG 4.1.2 – ARIA Misuse. The Website employed excessive and improperly implemented ARIA attributes, including the attribute aria-role description="Carousel of product images" applied to elements lacking proper underlying ARIA roles. Wishlist buttons and "Virtual Try On" controls were not programmatically associated with the specific products to which they corresponded, making it impossible for Mr. Butler to determine which product a given control was associated with.

14

50.     WCAG 4.1.3 – Status Messages Not Announced. Dynamic content changes on the Website—including carousel advances, product color changes triggered by hover interactions, and hover-state updates—were not announced to NVDA, leaving Mr. Butler unaware that the page's content was changing and unable to access the updated information available to sighted shoppers.

51.     These barriers, taken together, prevented Mr. Butler from meaningfully browsing, evaluating, and selecting products from the Website. He was unable to complete his intended purchases and was denied the full and equal access to Louis Vuitton's goods, services, and facilities that sighted consumers enjoy. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

**D.     Defendants' Failure to Institute Web Accessibility Policies, Programs, and Governance**

52.     On information and belief, Defendants have not initiated or implemented a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

53.     On information and belief, Defendants have not established a Web Accessibility Committee to ensure full and equal use of the Website by individuals with disabilities.

54.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator responsible for ensuring full and equal use of the Website by individuals with disabilities.

55.     On information and belief, Defendants have not established a User Accessibility Testing Group to conduct real-world testing of the Website with blind and visually impaired users employing screen reader software.

56.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy to ensure that accessibility defects identified on the Website are prioritized and remediated in a timely manner.

57.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program to identify, on a continuous or periodic basis, WCAG violations and other accessibility defects present on the Website.

58.     On information and belief, Defendants have not created or displayed on the Website a specialized customer assistance line, email contact mode, or other alternative means of customer service specifically for visually disabled users who are unable to effectively navigate the Website.

59.     On information and belief, Defendants have not created or displayed on the Website a dedicated accessibility page for individuals with disabilities, nor have they displayed an accessibility link, information hotline, or portal explaining when and how the Website, its applications, and its digital assets will be made accessible to blind and visually impaired users.

60.     On information and belief, the Website does not currently meet the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA or higher.

61.     On information and belief, Defendants have not disclosed to the public any intended audits, changes, or corrective measures to address the inaccessibility of the Website to visually disabled individuals.

62.     Defendants have been sued multiple times in prior years for alleged violations of the Americans with Disabilities Act relating to the accessibility of their digital platforms, including actions filed in the Southern District of Florida between 2018 and 2020. Although these earlier cases placed Defendants on notice that blind and visually impaired consumers

were unable to access Louis Vuitton's online content, Defendants have not implemented the policies, audits, or structural changes necessary to bring the Website into compliance with WCAG 2.1 Level AA or to ensure equal access for blind and visually impaired users.

63.    Defendants are and have been aware of the barriers to effective communication within the Website that prevent individuals with visual disabilities from comprehending and accessing the information and services presented therein. Defendants are aware of the need to provide full access to all visitors to the Website. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with disabilities who are visually disabled, including Plaintiff and all members of the proposed Class.

64.    There are readily available and well-established guidelines on the internet for making websites accessible to the blind and visually disabled, including the WCAG 2.1 standards published by the World Wide Web Consortium. These guidelines have been followed by other large retail and commercial enterprises in making their websites accessible. Incorporating these guidelines into the Website would neither fundamentally alter the nature of Defendants' business nor result in an undue burden to Defendants.

65.    Because Mr. Butler remains interested in purchasing goods from Louis Vuitton and intends to return to https://us.louisvuitton.com,  he faces the imminent threat of continued discrimination absent injunctive relief requiring Defendants to remediate the Website's accessibility barriers.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
***(Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189)***

66.    Plaintiff BENJAMIN BUTLER, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

17

67.     Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

68.     Pursuant to 42 U.S.C. § 12181(7)(E), Defendants are public accommodations under the ADA because they own and/or operate retail stores that are sales and rental establishments open to the public, and because the Website is an extension of, gateway to, and intangible service, privilege, and advantage of those physical stores. Defendants are therefore subject to all requirements of the ADA.

69.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations available to other individuals.

70.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."

71.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless

18

the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

72.     According to 28 C.F.R. § 36.303(b)(2), screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision and constitutes an auxiliary aid and service that public accommodations are required to support. Pursuant to 28 C.F.R. § 36.303(c)(1)(ii), auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

73.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal enjoyment of the information and services that Defendants have made available to the public on their Website and at their physical stores, in violation of 42 U.S.C. §§ 12101 and 12182, *et seq.*

74.     Defendants have discriminated against Plaintiff and the Class by failing to design, maintain, and operate the Website in a manner accessible to blind and visually impaired individuals, and by failing to provide proper auxiliary aids and services—including accessible alternative text, properly labeled controls, keyboard-accessible interactive elements, and screen-reader-compatible dynamic content—that would afford Plaintiff and the Class full and equal access to the Website's goods, services, and facilities.

75.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices.

76.     Defendants' discriminatory conduct is ongoing. Title III of the ADA does not require pre-suit notice or an opportunity to cure. See 42 U.S.C. § 12188(a)(1) (incorporating the remedies and procedures of 42 U.S.C. § 2000a-3(a)). Plaintiff is therefore entitled to seek injunctive relief without first providing notice to Defendants. [1]

77.     Pursuant to 42 U.S.C. § 12188(a)(1), which incorporates the remedies and procedures of 42 U.S.C. § 2000a-3(a), Plaintiff is entitled to seek injunctive relief for Defendants' violations of Title III of the ADA without providing pre-suit notice or an opportunity to cure. Plaintiff therefore requests the injunctive and declaratory relief set forth in the Prayer for Relief below.

<u>**SECOND CAUSE OF ACTION**</u>
*(Violation of the New York State Human Rights Law)*

78.     Plaintiff BENJAMIN BUTLER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79.     The New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.,* covers the actions of the Defendants. Plaintiff, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

80.     Defendants, at all relevant times, own and operate a place of public accommodation—the Website https://us.louisvuitton.com—within the meaning of Article 15 of N.Y. Executive Law § 292(9).

---

[1] Courts in this Circuit consistently hold that Title III of the ADA does not require pre-suit notice or an opportunity to cure. *See, e.g., Harty v. W. Point Realty, Inc.,* 28 F.4th 435, 443 n.3 (2d Cir. 2022) *(*"Title III contains no notice requirement."*); Range v. 535 Broadway Group, LLC*, 2021 WL 3036933, at *4* (S.D.N.Y. July 19, 2021) *(*rejecting argument that plaintiff must provide notice before filing suit*)*. Because Title III incorporates the remedies of 42 U.S.C. § 2000a-3(a), plaintiffs may file suit immediately upon encountering discrimination.

81. Under Article 15 N.Y. Executive Law § 296(2)(a), it is an unlawful discriminatory practice for the owner or operator of any place of public accommodation, because of the disability of any person, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

82. Defendants' actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by owning and operating a website that is inaccessible to sight-impaired individuals; by failing to remove access barriers to the Website; and by refusing to implement modifications necessary to afford facilities, privileges, advantages, and accommodations to individuals with disabilities.

83. Defendants have intentionally and willfully discriminated against Plaintiff and the Class in violation of the NYSHRL, and the discrimination continues to date. Absent injunctive relief, Defendants' discrimination will continue, causing irreparable harm.

84. Plaintiff and the Class are entitled to compensatory damages, civil penalties, and fines, in addition to reasonable attorneys' fees, costs, and disbursements. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
*(Violation of the New York State Civil Rights Law ("NYCRL")*

85. Plaintiff, BENJAMIN BUTLER, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86. Plaintiff served notice thereof upon the New York State Attorney General, as

21

required by N.Y. Civil Rights Law § 41. (Exhibit B) (Notice to Attorney General).

87.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodation. N.Y. Civ. Rights Law § 40.

88.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by any person, firm, corporation, or institution. N.Y. Civ. Rights Law § 40-c.

89.    Defendants discriminate against Plaintiff and the Subclass under NYCRL § 40 by owning and operating a Website that is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons, and that discriminates against disabled individuals who are sight-impaired.

90.    Under N.Y. Civil Rights Law § 41, a corporation that violates the provisions of §§ 40, 40-a, 40-b, or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars.

91.    Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for each of Defendants' acts of discrimination, including civil penalties and fines under N.Y. Civil Rights Law § 40 *et seq.*

## FOURTH CAUSE OF ACTION
### *(Violations of the New York City Human Rights Law ("NYCHRL")*

92.    Plaintiff, BENJAMIN BUTLER, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93.    N.Y.C. Administrative Code § 8-107(4)(a) provides that it shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, because of any person's disability, directly or indirectly, to refuse, withhold from, or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation.

94.    Defendants are subject to the NYCHRL because they own and operate the Website https://us.louisvuitton.com and maintain multiple physical retail locations within New York City, making them "persons" within the meaning of N.Y.C. Admin. Code § 8-102(1).

95.    Defendants violate N.Y.C. Administrative Code § 8-107(4)(a) by refusing to update or remove access barriers from the Website, causing the Website and the services integrated therein to be inaccessible to blind patrons, and thereby denying them full and equal access to the facilities, products, and services Defendants make available to the non-disabled public.

96.    Defendants are required to "make reasonable accommodation to the needs of persons with disabilities." N.Y.C. Admin. Code § 8-107(15)(a). Defendants have failed to do so.

97.    Defendants' actions constitute willful intentional discrimination against the Sub-Class based on disability in violation of N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendants have: (a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; (b) constructed and maintained a Website that is obviously and facially inaccessible to blind class members; and (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

98.     Defendants have failed to take any prompt or equitable steps to remedy their discriminatory conduct, and the violations are ongoing. Unless the Court enjoins Defendants, Plaintiff and members of the Class will continue to suffer irreparable harm.

99.     Plaintiff is entitled to compensatory damages, civil penalties, and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502, and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### *(Declaratory Relief)*

100.     Plaintiff, BENJAMIN BUTLER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants deny, that the Website contains access barriers denying blind customers full and equal access to the products, services, and facilities of the Website, which Defendants own, operate, and control, and that such barriers fail to comply with applicable law including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182 *et seq.,* and N.Y.C. Admin. Code § 8-107 *et seq.*

102.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.     A preliminary and permanent injunction prohibiting Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182 *et seq.*; N.Y.C. Administrative Code § 8-107 *et seq.*; and the laws of New York;

24

b.     A preliminary and permanent injunction requiring Defendants to take all steps necessary to bring the Website https://us.louisvuitton.com into full compliance with the ADA and its implementing regulations, so that the Website is readily accessible to and usable by blind and visually impaired individuals, and to continue to monitor and update the Website on an ongoing basis to maintain such compliance;

c.     An Order requiring Defendants to adopt and implement a publicly available Web Accessibility Policy, directly linked from the Website homepage, which sets forth Defendants' commitment to ensuring full and equal access to the Website for individuals with disabilities, accompanied by an accessible means of submitting accessibility questions, feedback, and complaints;

d.     An Order requiring Defendants to designate a Web Accessibility Coordinator responsible for ensuring ongoing compliance with applicable accessibility standards;

e.     An Order requiring Defendants to provide mandatory web accessibility training, at least annually, to all employees who write, develop, or publish content or code for the Website, covering conformance with ADA accessibility requirements and applicable accessibility guidelines;

f.     An Order requiring Defendants to conduct automated accessibility testing of the Website at least once every three months to identify instances of non-conformance with applicable accessibility requirements, and to provide copies of quarterly reports to Plaintiff's counsel for review;

g.     An Order requiring that any third-party vendors who participate on or contribute content to Defendants' Website comply with applicable accessibility requirements;

h.     A declaration that Defendants own, maintain, and/or operate the Website in a manner that discriminates against blind individuals and fails to provide access for persons with disabilities as required by the ADA, the NYSHRL, the NYCHRL, and the NYCRL;

i.     An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

j.     Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Class and Subclasses for violations of their civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

k.     Pre-judgment and post-judgment interest;

l.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
February 23, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert L. Schonfeld*

**Robert Schonfeld, Esq.**
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com